IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHELLE GARCIA,

      Plaintiff,                            No. 2:10-cv-3164 KJN (TEMP)

     v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      Defendant.                    <u>ORDER</u>
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] (Dkt. No. 14.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Dkt. No. 16.) For the reasons stated below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

////

////

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 6, 11.)

1

I.      BACKGROUND[2]

Plaintiff was born on September 20, 1958, and applied for SSI on November 30, 2005. See Administrative Transcript ("AT") 78. In a disability report, plaintiff stated she had completed one year of college. AT 100. Plaintiff reported that she had never worked. AT 92. Plaintiff alleges that she is disabled due to Hepatitis C, irritable bowel syndrome, sleep apnea, asthma, deteriorating bone disease, GERD, high blood pressure, chronic fatigue, and difficulty focusing/concentrating. AT 92. Plaintiff later reported that since January 2006, she walked with a can[e], suffered severe nausea, and had chronic back pain and severe feet, legs, neck, arm and hand pain, characterized as "screaming pain." AT 134.

A.      Procedural Background

In a decision dated February 4, 2009, the ALJ denied plaintiff's application. AT 9-20. As discussed below, the ALJ determined that plaintiff was able to perform jobs that existed in significant numbers in the national economy, and that plaintiff has not been under a disability at any time since November 30, 2005, the date the application was filed. AT 19. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. AT 1-3.

Plaintiff subsequently filed this action. Plaintiff contends that the ALJ improperly found plaintiff's depression is not a severe impairment, failed to properly evaluate and credit the medical evidence, improperly discredited plaintiff, and improperly relied on the Medical-Vocational Guidelines[3] in finding plaintiff is not disabled.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] The Ninth Circuit Court of Appeals has described the Medical-Vocational Guidelines, or the "grids," which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2, as follows:

"The grids are applied at the fifth step of the analysis under 20 C.F.R. §

B. Summary of the ALJ's Findings

The ALJ conducted the required five-step, sequential evaluation and concluded that plaintiff was not disabled within the meaning of the Act.[4] At step one, the ALJ concluded

---

404.1520, and present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. [Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).] The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress - a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. Id. If a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled. Heckler v. Campbell, 461 U.S. 458, 461, 103 S. Ct. 1952, 76 L.Ed.2d 66 . . . (1983)."

Tommasetti v. Astrue, 533 F.3d 1035, 1043 n.4 (9th Cir. 2008).

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

3

1  that plaintiff had not engaged in substantial gainful activity since November 30, 2005, the

2  application date.  AT 11.  At step two, the ALJ found that plaintiff has severe impairments of

3  anxiety disorder, rule out somatization disorder, GERD, irritable bowel syndrome, hypertension,

4  hepatitis C, degenerative disc disease of the lumbar and cervical spine, allergies and asthma. At

5  step three, the ALJ found that plaintiff did not have an impairment or combination of

6  impairments that met or medically equaled any impairment listed in the applicable regulations

7  during the relevant time period.  The ALJ specifically addressed whether plaintiff meets or

8  medically equals Listings 12.06 and 12.07.  AT 11.

9         The ALJ next assessed plaintiff's residual functional capacity ("RFC").  The ALJ

10 found that:

11 > the claimant has the residual functional capacity to perform light work as
> defined in 20 CFR 416.967(b) except frequent balancing, and occasional
12 > climbing of ropes, ladders, and scaffolds, stairs and ramps, stooping,
> kneeling, crouching, and crawling, no frequent overhead reaching
13 > bilaterally, and avoid concentrated exposure to fumes, odors, dusts, gases
> and poor ventilation; and unskilled work with no public contact.

15 AT 12-13.[5]  In making such a finding, the ALJ gave little weight to the testimony of plaintiff and

16 her mother, finding them not credible.  AT 18.

17        At step four, the ALJ found that plaintiff has no past relevant work.  AT 18.  At

18 step five, using Medical-Vocational Rule 202.20 as a framework for decisionmaking, the ALJ

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

[5] 20 C.F.R. § 416.967(b) provides:

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities.

4

1  found plaintiff had not been under a disability since November 30, 2005, the date the application

2  was filed.[6]  AT 19.

3  II.     STANDARDS OF REVIEW

4         The court reviews the Commissioner's decision to determine whether it is (1) free

5  of legal error; and (2) supported by substantial evidence in the record as a whole.  Bruce v.

6  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

7  Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

8  Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means

9  more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

10 reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc.

11 Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

12 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health &

13 Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  "The ALJ is responsible for determining

14 credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews,

15 53 F.3d at 1039; see also Tommasetti, 533 F.3d at 1041 ("[T]he ALJ is the final arbiter with

16 respect to resolving ambiguities in the medical evidence.").  Findings of fact that are supported

17 by substantial evidence are conclusive.  42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221

18 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a whole can support either a grant or a

19 denial, [the court] may not substitute [its] judgment for the ALJ's."  Bray, 554 F.3d at 1222

20 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of

21 Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than

22 one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart,

23 400 F.3d 676, 679 (9th Cir. 2005)).  However, the court "must consider the entire record as a

24 whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"

---

[6] The period at issue for SSI commences on the date the application is filed.

Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

### III.   ANALYSIS

#### A.   Severity of Impairments

Plaintiff contends the ALJ committed error at step two in the sequential analysis by not identifying plaintiff's depression as a "severe" impairment. At step two of the sequential evaluation, the ALJ determines whether the claimant has a medically "severe" impairment or combination of impairments. See 20 C.F.R. § 416.920(a)(4)(ii); see also Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996). An impairment is severe when it significantly limits a claimant's "physical or mental ability to do basic work activities" and lasted or is expected to last "for a continuous period of at least 12 months." See 20 C.F.R. §§ 416.920(a)(4)(ii), (c), 416.909. Basic work activities refer to "the abilities and aptitudes necessary to do most jobs."[7] 20 C.F.R. § 416.921(b).

Although centered around the term "severe," "the step-two inquiry is a de minimis screening device to dispose of groundless claims." See Smolen, 80 F.3d at 1290. The purpose is to identify "at an early stage those claimants whose medical impairment is so slight that it is

---

[7] The applicable regulation provides examples of such "abilities and aptitudes":

  (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

  (2) Capacities for seeing, hearing, and speaking;

  (3) Understanding, carrying out, and remembering simple instructions;

  (4) Use of judgment;

  (5) Responding appropriately to supervision, co-workers and usual work situations; and

  (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

6

unlikely they would be disabled even if their age, education, and experience were taken into account." Bowen, 482 U.S. at 153. "An impairment or combination of impairments may be found not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and quotation marks omitted).

With respect to mental impairments, the ALJ found at step two of the sequential analysis that plaintiff has severe mental impairments of anxiety disorder, and rule out somatization disorder. AT 11. Although the ALJ did not specifically identify plaintiff's depression as "severe," the ALJ thoroughly reviewed plaintiff's psychiatric history and treatment and considered limitations attributable thereto when formulating plaintiff's residual functional capacity. AT 16-17. Because the ALJ found plaintiff has severe impairments at step two of the sequential analysis and proceeded through the sequential analysis to step five, the court finds no basis for reversal in the findings made at step two. Moreover, the court notes that several of the examining and state agency physicians were afforded an opportunity to review plaintiff's medical records and their assessments of plaintiff's residual functional capacity encompassed limitations due to all of plaintiff's impairments, whether characterized as "severe" or not. See, e.g. AT 351-53 (May 1, 2006 state agency mental residual functional capacity assessment found plaintiff not significantly limited in thirteen categories and moderately limited in seven categories, concluding plaintiff can engage in simple significant gainful activity where there is little contact with others); AT 316-21 (examining clinical psychologist reviewed records and conducted independent examination; concluded plaintiff had mild limitations due to anxiety in some categories and has ability to understand, remember, and carry out one- and two-step instructions); AT 425-30 (psychological consultant found mild limitations attributable to anxiety and depression). Under these circumstances, the failure to characterize plaintiff's depression as a severe impairment is not a basis for reversal of the ALJ's decision.

////

B.  Record Medical Opinions

Plaintiff also contends the ALJ improperly discounted the opinion of her treating psychologist Dr. Taetzsch in favor of the opinions of the consulting psychologists.  The medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  Lester, 81 F.3d at 830.  Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion.  Id.  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions.  Id.  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record.  Id. at 830-31; accord Valentine, 574 F.3d at 692.  "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'"  Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony."  Magallanes, 881 F.2d at 750; see also Burkhart v. Bowen, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (affirming where the ALJ carefully detailed arguably conflicting clinical evidence and provided reasons for crediting one treating physician's opinion over another treating physician's opinion).

Dr. Taetzsch, plaintiff's treating psychologist, opined in a check-box form concerning a medical assessment of plaintiff's ability to do mental work-related activities dated October 13, 2008, that plaintiff had "poor or none" in several categories assessing occupational, performance and personal-social adjustments.  AT 545-46.  With respect to the ability to

8

understand, remember, and carry out simple job instructions, Dr. Taetzsch assessed plaintiff's ability as "fair."[8] AT 546. The ALJ accorded no weight to this opinion on the basis that the functional assessment was so extreme that it appeared implausible. AT 18. The ALJ also discounted Dr. Taetzsch's opinion on the basis that it was inconsistent with his own treating records and that it appeared to rely heavily on plaintiff's subjective complaints which were unsupported by clinical findings. AT 17 (noting that Dr. Taetzsch's stated treatment goal was to help plaintiff deal with complaints of pain and not for psychological disorder); AT 18.

In rejecting Dr. Taetzsch's extreme limitations, the ALJ relied on other record medical opinions which found that plaintiff was capable of performing unskilled work[9] with no public contact. AT 18. The ALJ accorded "controlling weight" to the opinion of examining psychologist Dr. Azevedo who opined that plaintiff had the ability to "understand, remember, and carry out one- and two-step instructions of moderate levels of complexity" and had some limitations in the ability to "interact appropriately with supervisors, co-workers, and the general public." AT 321. The ALJ similarly accorded controlling weight to the opinion of examining psychologist Dr. Koulianos who opined that plaintiff was only "mildly to moderately" impaired in the ability to execute simple and uncomplicated routine one- or two-step job instructions. AT 429. Both of these examining psychologists conducted their own psychological testing and their opinions were based on their independent clinical findings. AT 316-21, 425-30. The ALJ thoroughly analyzed and accurately summarized the medical evidence, appropriately resolving the conflict, to the extent that there was conflict, between the opinions of the treating and examining psychologists. Burkhart v. Bowen, 856 F.2d at 1339-40. Moreover, the state agency physician Dr. Harrison opined that plaintiff was not significantly limited or only moderately

---

[8] The check-box form used by Dr. Taetzsch defined "fair" as "seriously limited, but not precluded." AT 545.

[9] Unskilled work is defined as work that consists of "simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968.

9

limited in all mental functional categories, concluding that plaintiff "is able to learn, carry out, sustain, and adapt to only simple [significant gainful activity] where there is little contact with others." AT 351-53.  Substantial evidence supports the ALJ's resolution of the conflicting medical opinions.

### C. Credibility

Plaintiff also challenges the adverse credibility finding in which the ALJ found the testimony of plaintiff and her mother to be not credible.  AT 18.  In Lingenfelter v. Astrue, the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

504 F.3d at 1035-36 (citations and quotation marks omitted).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in

second-guessing." Id. at 959.

Here, the ALJ discounted plaintiff's testimony and that of her mother regarding plaintiff's pain and functional limitations for several reasons. For example, he noted that plaintiff was not compliant with her prescribed treatment. AT 14, 18, 481 (patient "is noncompliant with almost all the treatments"). The ALJ also considered the extensive diagnostic studies plaintiff had undergone with respect to plaintiff's complaints of musculoskeletal pain with no recommendation for surgery and that plaintiff reported receiving good benefit from epidural injections. AT 14, 173-76 ("epidural injections led to decreased pain and improvement in function. Medications are helpful without side effects."). See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms). Also factored into the credibility analysis was plaintiff's poor effort on physical examination by the consulting physician and the inconsistency between her presentation in the examination room (limping and unsteady gait) and in the parking lot when she thought she was unobserved ("improved quite a lot"). AT 14, 312. The ALJ also considered the inconsistency between the testimony of plaintiff and her mother that the mother performed all the household chores and the notes of the treating psychiatrist which recorded that plaintiff helped her mother with the chores when her mother was ill and that plaintiff avoided being around her mother; the ALJ also noted that after plaintiff's son, who allegedly helped plaintiff with chores, moved out of plaintiff's household, plaintiff did not seek assistance for in-home care. AT 17, 552, 555, 558, 559, 560.

To the extent that there was conflicting evidence concerning plaintiff's level of activity and functioning, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and the ALJ's interpretation "may not be the only reasonable

one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair, 885 F.2d at 604. Taken together, the undersigned finds that ALJ's reasons for discounting plaintiff's testimony are clear and convincing. Accordingly, the ALJ did not err in making his credibility finding.

### D. Grids

Finally, plaintiff contends that the ALJ was required to call a vocational expert to assess the availability of jobs in the national economy that plaintiff could perform. Plaintiff contends that her mental impairments preclude application of the grids. The ALJ here, in determining whether plaintiff could make a successful adjustment to light work, considered the Social Security Rulings relevant to this determination. He recognized that the GRIDS may be used as a framework for decisionmaking even where a claimant has exertional and nonexertional limitations. AT 19. The ALJ properly found that plaintiff's limitations had little or no effect on the occupational base of unskilled light work. Id. See Kerry v. Apfel, 242 F.3d 382 (9th Cir. 2000) (recognizing that an alleged non-exertional limitation does not automatically preclude application of the GRIDS, and that the ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations); Young v. Sullivan, 911 F.2d 180, 185 (9th Cir. 1990) (permissible for ALJ to rely on the GRIDS as a framework for decision making); see Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (affirming the ALJ and holding that the claimant's depression was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert). As discussed above, the ALJ properly relied on the opinions of Drs. Azevedo and Koulianos in assessing plaintiff's

residual functional capacity which limited plaintiff to unskilled work with no public contact. AT 13. The ALJ specifically relied on Social Security Ruling 85-15 which notes that unskilled jobs ordinarily involve dealing primarily with objects, not people. That ruling also notes there are over 1,600 unskilled jobs that can be performed at the light and sedentary exertional levels. SSR 85-15. Under these circumstances, the ALJ properly relied on the grids, which administratively notice a significant number of jobs available to plaintiff.

## V.  CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied;
2. The Commissioner's cross-motion for summary judgment is granted; and
3. Judgment be entered in favor of the Commissioner.

DATED: August 22, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

garcia.kjn.temp.ss